IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON E. WHITE, | ) | CASE NO.  1:20-CV-00731-PAG |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN LYNEAL WAINWRIGHT, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Jason White ("White" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  White is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. White*, Cuyahoga County Court of Common Pleas Case No. CR-17-614163-A.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying White's conviction as follows:

> [¶ 1] Defendant-appellant Jason E. White admitted to killing his wife by shooting her in the head. After being indicted on counts of aggravated murder and felonious assault, White elected to be tried by the court solely on the issue

1

of whether he acted with prior calculation and design. The state showed that White believed that his wife was unfaithful to him and it relied on White's confession to the police in which he stated that he made the decision to kill her in advance of actually doing so. On this evidence, the court found White acted with prior calculation and design and found him guilty of aggravated murder, murder, and two counts of felonious assault. White was sentenced to a total prison term of 23 years to life.

* * *

[¶ 3] When the police searched White's house after the murder, they discovered, in addition to the murder weapon, a number of handguns, a shotgun, and a rifle. The court allowed evidence of the weapons to be admitted at trial. White argues that this evidence was irrelevant because the weapons were not used in the murder and he was licensed to carry a concealed weapon. The state maintains defense counsel opened the door to the evidence because he mentioned in his opening statement that the "house was full of guns[.]"

* * *

[¶ 7] In a recorded interview conducted just hours after the murder, White told the police that he and his wife had long been experiencing marital issues. These issues came to a head when he saw text messages on her cell phone that he believed indicated that she had been unfaithful with another man. His wife denied any infidelity, in contradiction to the text messages he claimed to have seen on her cell phone. Nevertheless, they talked throughout the night about their relationship. The following evening, they watched television together and discussed whether they should divorce. Before going to sleep in their basement bedroom, White decided he "couldn't take it anymore." When he awoke the following morning, White said he made the decision to kill his wife. They smoked a cigarette, and the wife, claiming to be tired from the evening spent talking, said she wanted to sleep some more. After she fell asleep, White obtained a gun, went upstairs, and placed a chair in front of his daughter's door so that she would not be able to leave the room and see what he was about to do. White returned to his sleeping wife and, using a heavy blanket to muzzle the sound of the shot, placed the handgun against her head and shot her. White then wrote a lengthy text message to his father, stating that "I can't live in jail so I don't see a better alternative I'm giving up my life for my daughter." White sent the text message and claimed that he tried to shoot himself, but that the gun jammed. When asked why he did not use another one of the weapons in the basement, White claimed that fate decided he should live, so he lost the will to die. The father arrived at White's house just minutes after receiving the text message. He found White sitting on the

2

side of the bed next to the wife, who was covered with a blanket. White told his father that he shot her. The father took the child and called the police.

*State v. White*, 2018-Ohio-3673, 119 N.E.3d 928, 930-31 (Ohio Ct. App. 2018).

## II.    Procedural History

**A.    Trial Court Proceedings**

On February 15, 2017, the Cuyahoga County Grand Jury indicted White on the following charges: one count of aggravated murder; one count of murder; and two counts of felonious assault.  (Doc. No. 7-1, Ex. 1.)  Each count had two firearm specifications and nine forfeiture of a weapon specifications. (*Id.*) White entered pleas of not guilty to all charges.  (Doc. No. 7-1, Ex. 2.)

White waived his right to a jury trial. (Doc. No. 7-1, Ex. 3.)  The trial court conducted an inquiry on the record regarding White's waiver of a jury trial, and found White's waiver to be knowing, intelligent, and voluntary. (Doc. No. 7-2 at 5-8.)  The trial court accepted White's waiver of jury trial. (Doc. No. 7-1, Ex. 4.)

The issue at trial was whether the state proved beyond a reasonable doubt that there was prior calculation and design to find aggravated murder.  (Doc. No. 7-3 at 267.)  After the bench trial, the trial court found White guilty of all counts of the indictment.  (Doc. No. 7-1, Ex. 5.)  The trial court made findings on the record regarding the element of prior calculation and design (Doc. No. 7-3 at 266-271), including the following:

> So whether the plan was conceived the night before or that morning the elements of prior calculation and design have been proven beyond a reasonable doubt. He had time to change his mind from the time that he smoked that cigarette from when he went to the bathroom, from when he carefully calculated putting the chair in front of his daughter's door so she couldn't see or hear anything, from the time that he took a perfectly folded blanket and placed it over her head so that he could muzzle the sound of that shot.

3

(*Id.* at 271.)

On October 10, 2017, the state trial court held a sentencing hearing.  (Doc. No. 7-1, Ex. 6.)  The trial court sentenced White to an aggregate prison sentence of twenty-three years to life.  (*Id.*)

## B.    Direct Appeal

On November 13, 2017, White, through counsel, filed a notice of appeal and a motion for leave to file a delayed appeal to the Eighth District Court of Appeals.  (Doc. No. 7-1, Ex. 7-8.)  On November 29, 2017, the state appellate court granted the motion.  (Doc. No. 7-1, Ex. 9.)   In his appellate brief, White raised the following assignments of error:

I.      Defendant was denied due process of law when the court admitted all of the unrelated weapons that were found in the house.

II.     Defendant was denied due process of law when the court found defendant guilty of aggravated murder and there was insufficient evidence to prior calculation and design.

III.    Defendant was denied his Sixth Amendment right to effective assistance of counsel when no motion to suppress was filed and other omissions.

IV.     Defendant was denied his Sixth Amendment right to a jury trial when the court improperly accepted a waiver of a jury trial.

V.      Defendant was denied due process of law when the court separately sentenced defendant for aggravated murder and felonious assault after merging offenses and imposing post-release control for aggravated murder.

(Doc. No. 7-1, Ex. 10.)  The State filed a brief in response.  (Doc. No. 7-1, Ex. 11.)

On September 13, 2018, the Court of Appeals affirmed the judgment of conviction but modified White's sentence consistent with the State's election of aggravated murder and vacated the sentences imposed on the remaining counts.  (Doc. No. 7-1, Ex. 12.)  *See also State v. White,* 119 N.E.3d at 933.

On September 24, 2018, White, through counsel, filed a motion for reconsideration.  (Doc. No. 7-1, Ex. 13.) The motion for reconsideration presented two of the assignments of error: (1) the first

4

assignment of error regarding the evidence of other weapons in the home and (2) the third assignment of error regarding ineffective assistance of counsel in not filing a motion to suppress.  (*Id.*)  The State filed a brief in opposition.  (Doc. No. 7-1, Ex. 14.)

On October 12, 2018, the state appellate court denied White's motion for reconsideration.  (Doc. No. 7-1, Ex. 15.)

On November 26, 2018, White, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 16.)  In his Memorandum in Support of Jurisdiction, White raised the following Propositions of Law:

I.   Admission of Irrelevant Evidence. A number of guns other than the murder weapon were admitted at trial. The appeal states that the error is harmless, and would not have effected [sic] the courts [sic] verdict of prior calculation and design. The issue is how the prosecution used the evidence at trial. The prosecutor said that White chose his wifes [sic] gun. The context in the way she used the evidence, [sic] was to show the appellant as being vengeful and acting with prior calculation and design.

II.  Ineffective Assistance of Counsel. The defense counsel did not attempt to correct false statements made by prosecution at trial. The defense counsel never brought in any texts or witnesses. The defense counsel never brought in the defendants [sic] or victims [sic] medical and mental records. The defense counsel also failed to show any proof of how the act did not have prior calculation and design.

III. Waiver of Jury Trial. White's decision to waiver [sic] a Jury Trial was not made intelligently. White was led to believe by ineffective counsel that it was the right choice. White had no law library in Cuyahoga County to educate him on a proper decision.

IV.  Ineffective Assistance of Appellate Counsel. Counsel did not submit or argue any records or testimonies in the appeal. Counsel did not give appellate [sic] a copy of transcripts or a copy of the counsel's appeal. The counsel did send appellate a copy of the prosecution's brief instead.

(Doc. No. 7-1, Ex. 17.)  The State did not file a response.  (Doc. No. 7-1, Ex. 18.)

On January 23, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 7-1, Ex. 19.)

5

## C.      Resentencing

On November 15, 2018, the trial court held a resentencing hearing, and the counts were merged as allied offenses for similar import.  (Doc. No. 7-1, Ex. 20.)  The trial court sentenced White to an aggregate prison sentence of twenty-three years to life for aggravated murder (Count One).  (*Id.*)

## D.      Federal Habeas Petition

On March 23, 2020,[1] White filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Defendant was denied due process of law when the court admitted all of the unrelated weapons that were found in the house. TR 58-59, 151-153, 223, 227-229, 248
>
>> **Supporting Facts**:  The weapons in the house were not all the defendant's. One was the victim's one belonged to a friend and another to his wife. All were legal all had concealed to carry permits.
>
> **GROUND TWO**:  Defendant was denied due process of law when the court found defendant guilty of aggravated murder and there was insufficient evidence of prior calculation and design. TR 23, 57, 58, 187, 253, 171
>
>> **Supporting Facts**:  Defendant knew wife 16 years. Married 11 years. Defendant's only plan was to commit suicide.
>
> **GROUND THREE**:  Defendant was denied Sixth Amendment right to effective assistance of counsel when no motion to suppress was filed and other omissions: TR 25, 42-44, 5-56, 53, 56, 204 21 Par. 2.
>
>> **Supporting Facts**:  Counsel ineffective for failure to obtain psychiatric evaluation: defendant has records from Cleveland Clinic that were never brought to court of treatment by 2 doctors for depression anxiety and suicidal thoughts over previous years. Defendant was on legal medications for pain and self medicating cannabis. Case should have been assigned to mental health court.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until April 3, 2020, White states that he placed it in the prison mailing system on March 23, 2020.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on March 23, 2020.

**GROUND FOUR**:  Defendant was denied Sixth Amendment right to jury trial when the court improperly accepted a waiver of a jury trial. (TR 6)

**Supporting Facts**:  Defendant did not know that he could withdraw the waiver.

(Doc. No. 1.)

On August 20, 2020, Warden Lyneal Wainwright ("Respondent") filed the Return of Writ.  (Doc. No. 7.)  On September 4, 2020, White filed a Traverse along with exhibits.  (Doc. No. 8.)  Because the exhibit to the Traverse contained personal identifiers, White filed redacted exhibits along with the Traverse on September 22, 2020.  (Doc. No. 9.)  That same day, Respondent filed a response to the Traverse.  (Doc. No. 10.)  On October 13, 2020, White filed a reply to the Respondent's response to the Traverse.  (Doc. No. 11.)  On October 19, 2020, White filed a supplement to his reply to the Respondent's response to the Traverse.  (Doc. No. 12.)

### III. Exhaustion and Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.;*

*see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62

9

(6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.    Application to Petitioner

Respondent argues White's second and fourth grounds are procedurally defaulted.  (Doc. No. 7 at 9.)  With respect to White's second ground, Respondent argues it is procedurally defaulted because White failed to include this issue on appeal to the Supreme Court of Ohio.  (*Id.*)  With respect to White's fourth ground, Respondent argues that the state appellate court found White's undeveloped argument violated Ohio App. R. 16(A)(7).  (*Id.* at 10.)  Respondent asserts White cannot show cause and prejudice or actual innocence to excuse the default.  (*Id.* at 23-25, 30-32.)  As White failed to address Grounds Two and Four in his Traverse, Respondent's arguments are uncontroverted.  (Doc. No. 9.)

### 1.  Ground Two

A careful review of the record reveals that while White raised this claim to the state appellate court, he failed to appeal this issue to the Supreme Court of Ohio.

10

The Court finds White's failure to appeal this issue to the Supreme Court of Ohio resulted in a procedural default. Therefore, Ground Two is procedurally barred unless White "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a. Cause and Prejudice

As White failed to address this ground in the Traverse, he did not raise any arguments regarding cause and prejudice to excuse the procedural default. Furthermore, as White was not entitled to counsel on appeal to the Supreme Court of Ohio, he cannot cite ineffective assistance of appellate counsel as grounds for his failure to include this issue in his appeal of the state appellate court's decision. *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).

As White fails to show cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533–34.

### b. Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Conclusory statements are not enough—a petitioner must

11

"support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

White has not claimed actual innocence.  (Doc. No. 1.)  In fact, White admitted to killing his wife; the only issue at trial was whether there was prior calculation and design.   (Doc. No. 7-3 at 267.) Therefore, actual innocence cannot excuse the procedural default of Ground Two.

### 2.  Ground Four

White raised this claim on direct appeal to the state appellate court and to the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 10, 17.)  The state appellate court found as follows:

> {¶ 15} White waived his right to be tried to a jury, a waiver that he concedes "may have been sufficient to waive a jury trial" under the Ohio Constitution. He maintains, however, that the jury trial waiver was insufficient under the United States Constitution. Unfortunately, apart from citing two federal cases that provide guidelines for determining the voluntariness of a jury trial waiver, White makes no independent argument, supported by facts in the record, showing why his waiver was invalid. This type of asserted but undeveloped argument does not satisfy an appellant's obligation under App.R. 16(A)(7). *State v. Ware*, 8th Dist. Cuyahoga No. 106176, 2018-Ohio-2294, 2018 WL 3005900, ¶ 21, fn. 2. In any event, the transcript shows that the court thoroughly questioned White about his written waiver before accepting it and was satisfied that the waiver was knowingly, intelligently, and voluntarily made by White. We have no basis for finding error.

*State v. White*, 119 N.E.3d at 933.

12

Courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review. *Hayes v. LaRose*, Case No. 5:14cv2461, 2016 WL 1599807, at *6 (N.D. Ohio Jan. 27, 2016) (collecting cases), *report and recommendation adopted by* 2016 WL 1599804 (N.D. Ohio April 18, 2016). This claim is, therefore, procedurally defaulted.

### a.  Cause and Prejudice

As White failed to address this ground in the Traverse, he did not raise any arguments regarding cause and prejudice to excuse the procedural default.  While White asserts in his Petition that he did not know he could withdraw his waiver of jury trial, a petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

As White fails to show cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

White has not claimed actual innocence.  (Doc. No. 1.)  In fact, White admitted to killing his wife; the only issue at trial was whether there was prior calculation and design.   (Doc. No. 7-3 at 267.) Therefore, actual innocence cannot excuse the procedural default of Ground Two.

### IV. Non-cognizable claim

Respondent argues Ground One is non-cognizable on federal habeas review as White fails to show this evidentiary ruling rose to the level of violating due process or showing that there is a United States Supreme Court case establishing a due process right regarding the specific kind of evidence at issue. (Doc. No. 7 at 11.)

Federal habeas relief is unavailable to retry state issues that do not rise to the level of a federal constitutional violation.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Nunez v. Brunsman*, 886 F. Supp. 2d 765, 769 (S.D. Ohio 2012) ("habeas relief is only available to correct violations of federal law").  State evidentiary errors, "especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983); *see also Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017) ("With  regard  to  evidentiary  rulings,  the standard for habeas relief is not easily met").  An evidentiary ruling "will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights."  *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Finally, a state claim does not transform into a federal

14

constitutional violation merely from alleging a due process violation at the habeas level.  *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

Respondent's argument is well-taken.  White makes no showing that the admission of evidence of other weapons rises to the level of a due process violation or that there is a United States Supreme Court case establishing a due process right with regard to this specific kind of evidence.  Therefore, Ground One is non-cognizable on habeas review.

### V.  Review on the Merits

**A.  Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016);

*Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision,"

16

relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

In Ground Three, White argues he was denied his Sixth Amendment right to the effective assistance of counsel when trial counsel failed to file a motion to suppress, along with "other omissions," including failure to obtain a psychiatric evaluation, failure to submit treatment records regarding White's depression, anxiety, and suicidal thoughts over the previous years, that White was on legal medications and self-medicating with cannabis, and the case should have been assigned to the mental health court. (Doc. No. 1 at 8.)

Respondent argues that White "cannot prove that his Fourth Amendment claim is meritorious *and* that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice" as required by *Richardson v. Palmer*, 941 F.3d 838 (6th Cir. 2019). (Doc. No. 7 at 28) (emphasis in original). Respondent maintains that any motion to suppress would have been futile under *Mincy v. Arizona*, 437 U.S. 385, 392-93 (1978), as the state appellate court

17

held, and the state appellate court's decision was not "objectively unreasonable nor is it 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'"  (*Id.* at 28-29) (citation omitted).  Respondent asserts that White also cannot show a reasonable probability of a different outcome where he "gave an admissible and comprehensive statement to the police, and the only issue in the case was his intent, i.e., whether the killing was with prior calculation and design . . . ."  (*Id.* at 29-30.)  Respondent argues that nothing could have come from a motion to suppress where the killing and killing method were "obvious" and "not relevant to the single issue of White's prior calculation and design from the surrounding circumstances." (*Id.* at 30.)

In his Traverse, White asserts his "specific intention to expand Issue III and the facts of Mancino's brief to include facts, materials, and documents that Mancino did not have at the time he wrote his brief, and were only recently acquired by [White's] parents."  (Doc. No. 9 at 2.)  White argues the appellate brief "must be expanded because [counsel] lacked copies of [White's] medical records, doctor's reports and prescribed medications at the time of the tragic incident that brought us to this point."  (*Id.*)  White argues trial counsel failed to call any medical experts even though White had been treated at the Cleveland Clinic "for severe physical and mental conditions for over two years prior to the incident."  (*Id.*)  White asserts that even though the trial court provided funds for a psychiatric evaluation, no report was placed in the record and White maintains he did not see the report.  (*Id.* at 4.)  White then argues no psychiatric evaluation was ever obtained.  (*Id.* at 5.)  White also asserts a competency hearing should have been held. (*Id.* at 6.)

In response to White's Traverse, Respondent argues that the record demonstrates trial counsel "was fully aware of and investigated a psychological defense."  (Doc. No. 10 at 1.)  Defense counsel obtained a

psychiatric report and made use of the information at sentencing.  (*Id.* at 2.)  The report concluded that White "was both competent and sane at the time of the commission of the killing."  (*Id.*)

White filed a reply to Respondent's response to his Traverse (Doc. No. 11), outside of the scope of briefing set forth in this Court's Order.  (Doc. No. 4.)  White argues trial counsel never investigated a psychological defense as White was supposed to testify at trial and then trial counsel "canceled this minutes before the court was called into session," so "no psychological defense was attempted."  (Doc. No. 11 at 2.)  White argues there was no competency hearing and Dr. Fabian was not called at trial, although his report was used at sentencing "for the purpose of justifying his fee."  (*Id.* at 3.)  White attached a medical record as an exhibit to this reply (Doc. No. 11-1), and subsequently filed a supplement that included transcript pages from sentencing which had been omitted from his reply.  (Doc. No. 12.)

The record reflects White raised an ineffective assistance of trial counsel claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.[3]  (Doc. No. 7-1, Ex. 10, 17.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 9} For his third assignment of error, White complains that he was denied the effective assistance of counsel because defense counsel failed to file a motion to suppress statements he made to the police after they entered his house without a warrant and without knocking.
>
> {¶ 10} Central to White's argument is his assertion that there is no "crime scene" exception to the warrant clause of the Fourth Amendment to the United States Constitution. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable'" and is "'subject only to a few specifically

---

[3] In his memorandum in support of jurisdiction to the Supreme Court of Ohio, White framed his ineffective assistance of counsel claim as follows: "The defense counsel did not attempt to correct false statements made by prosecution at trial. The defense counsel never brought in any texts or witnesses. The defense counsel never brought in the defendants (sic) or victims (sic) medical and mental records. The defense counsel also failed to show any proof of how the act did not have prior calculation and design." (Doc. No. 7-1, Ex. 17.)  The Court broadly construes this claim to include failure to file a motion to suppress and failure to obtain a psychiatric evaluation, especially in the absence of any claim of procedural default by Respondent.  (Doc. No. 7.)

19

established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Nevertheless, an exception to the warrant requirement exists for searches conducted during exigent or emergency circumstances. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In emergency situations, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person inside is in need of immediate aid. *Id.* at 392-393, 98 S.Ct. 2408; *Michigan v. Fisher*, 558 U.S. 45, 47, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) (law enforcement "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").

{¶ 11} The state played a recording of the 911 call that White's father made to the police. In that call, the father stated that White "just shot his wife" and "he's got a gun." The father said that the wife was "in the basement with my son," but when asked if he saw the wife, he could only say that she was "laying in the bed covered with a blanket." With this limited information, the police justifiably entered the house to render emergency assistance to the wife, whom they knew had been shot by White, but had no further indication of her condition. In addition, the police were told that White remained with the wife. They understood the scene as one with an active shooter and, in the words of a police investigator, "we didn't know what was going on and who was inside[.]" All of this was known to defense counsel. A motion to suppress on grounds that the police lacked a warrant when they entered the house would have been futile, so defense counsel did not violate any essential duty by refusing to file one. *State v. Miller*, 8th Dist. Cuyahoga No. 94662, 2011-Ohio-2388, 2011 WL 1944310, ¶ 44.

{¶ 12} White also complains that defense counsel erred by failing to request a psychiatric evaluation even though granted funds to do so by the court. He maintains that an examination was warranted given that he contemplated killing himself after shooting his wife. We reject this assertion because the record shows that during sentencing, defense counsel informed the court that White had been examined by a forensic psychologist but did not offer the psychologist's report because White was found to be "sane and competent." In addition, the record shows that the court granted payment for the defendant's consulting psychologist. So not only would a motion based on White's alleged lack of competency have been futile, appellate counsel's argument that defense counsel failed to seek an evaluation is frivolous.

{¶ 13} Finally, White argues that defense counsel erred by conceding guilt without White's express consent. This case is not affected by the recent United States Supreme Court decision in *McCoy v. Louisiana*, 584 U.S. ——, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018), where the court held that "counsel

20

may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission[.]" *Id.* at ——, 138 S.Ct. at 1510, 200 L.Ed.2d at 833. White freely admitted to shooting his wife in his statement to the police and did not offer an "intransigent objection" to defense counsel's strategy. *United States v. Weston*, E.D.Pa. No. 13-cr-25-01, 2018 U.S. Dist. LEXIS 91306, 15 (May 31, 2018), fn. 31.

{¶ 14} In fact, White rejected a plea offer in which he would plead guilty to a single count of aggravated murder in exchange for a sentence of 20 years to life, with a three-year firearm specification. White desired to plead to a single count of murder with a term of 15 years to life, with a three-year firearm specification. When the state rejected that counteroffer, White elected to try the case on the sole issue of prior calculation and design, being "hopeful" that he would be found guilty of murder, which would require a prison term of 18 years to life, with a firearm specification. As defense counsel told the court during sentencing, during his discussions with White on the plea offer made by the state, White said, "I'll take my chances on the prior calculation and design." The record thus shows that White made a reasoned decision to concede, consistent with his confession, that he killed his wife.

*State v. White*, 119 N.E.3d at 931-33.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at105.  *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon*, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

Because part of White's ineffective assistance of trial counsel claim is based on a Fourth Amendment issue, he faces an additional hurdle on review:

> Adding to Richardson's burden with the standard of review, the Supreme Court explained in *Kimmelman* that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious *and* that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." 477 U.S. at 375, 106 S.Ct. 2574 (emphasis added).

22

> Therefore, under AEDPA, we look to see whether it was objectively unreasonable under Supreme Court precedent for the state court to deny Richardson's claim of ineffective assistance of counsel. In making that determination, we look to whether Richardson has demonstrated that his counsel's performance was deficient under *Strickland*. We then consider whether Richardson was prejudiced by the alleged deficiencies, which requires that Richardson demonstrate that his Fourth Amendment claim would have been meritorious and, but for Sian's testimony being admitted, there is a reasonable probability that he would have been found not guilty. With such a demanding standard of review, it is perhaps of no surprise that Richardson fails to establish that his counsel was ineffective.

*Richardson*, 941 F.3d at 857.

Here, the Court finds the state appellate court reasonably determined trial counsel was not ineffective.  Regarding trial counsel's failure to file a motion to suppress, the state appellate court cited the applicable Supreme Court precedent in finding any such motion would have been futile, and therefore counsel could not have been deficient in failing to file one.  Moreover, White confessed to killing his wife both at the scene and later at the police department.  (Doc. No. 7-2 at 57; Doc. No. 7-3 at 253-54, 259-62, 267-69.)  Regarding the argument that no psychological evaluation was obtained, the record reflects Dr. Fabian conducted a psychological evaluation (Doc. No. 7-3 at 281-82), making any such argument futile and frivolous, as the state appellate court found.  Furthermore, the record shows Dr. Fabian's report demonstrated mental health issues and medication, and defense counsel utilized that information for purposes of mitigation at sentencing.  (*Id.* at 282-84.)  As defense counsel conceded, such information was not admitted at trial because the report determined White was sane and competent at the time of the killing.  (*Id.* at 282.)

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  562 U.S. at 105.  Under this deferential standard, along with the additional burden imposed by the Fourth Amendment issue, the Court finds the state

23

appellate court reasonably determined trial counsel was not ineffective for failing to file a motion to suppress and purportedly failing to obtain a psychiatric evaluation.  It is therefore recommended White's third ground for relief be denied.

### VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: August 15, 2022                                    _s/ Jonathan Greenberg_
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**